*Bullock, for appellant.*

BENJAMIN MOURNING *v.* H. H. STRATTON ET AL.

Lien—Exchange of Mortgage Notes for Notes Unsecured—Substitution.

Although the simple exchange of mortgage notes given for the purchase price of real property, for those of a stranger, and which were unsecured, might prima facie imply a waiver of the lien, the fact that the mortgage made the exchange for the accomodation of the mortgagor, who had either removed or was about to remove to another state, and was in doubtful circumstances, and the strong probability that the mortgagee would not otherwise have received his note unsecured in satisfaction of notes amply secured by lien, would repel that presumption and authorize the conclusion that the parties intended a mere substitution, which would not extinguish the lien but only change the debtor and the evidence of the same debt.

Same—Notice—Fraud—Trust.

A party purchasing lands with actual or constructive notice of a trust existing in his vendor, though not of record, acquires no right beyond that held by such vendor, and any attempt to pass an unincumbered title with such notice, would be fraudulent.

APPEAL FROM ANDERSON CIRCUIT COURT.

May 23, 1868.

OPINION OF THE COURT BY JUDGE ROBERTSON:

On the 11th of December, 1859, Thomas Montjoy conveyed to Lorenzo D. Wiggs a house and lot in the village of "Rough and Ready," Anderson county, Kentucky, reserving a lien for a recited balance of the consideration, for which he held notes on *Wiggs* for about $400, thus secured and yet unpaid, and which he sold and assigned to the appellant, Benjamin Mourning, before the year 1864. In February, 1864, *Wiggs* made an executory sale of

the same house and lot to John T. Parker and took his note for $421, recited as the last payment of the consideration. In July, 1864, on the eve of his removal to Indiana, Wiggs assigned Parker's note to the appellant, in lieu of the unpaid notes for original amount held by him, and which were secured by the lien reserved in Montjoy's conveyance. And afterwards, in September, 1864, he conveyed the house and lot to *Parker,* who has not denied the charge of notice of all those facts and of an understanding that the lien should still continue. On the 21st of November 1865, *Parker,* for the consideration of $1,300, conveyed the legal title to the house and lot to the appellee, H. H. Stratton, who, for all the circumstances, must be presumed to have then known the essential facts conducing to establish Mourning's title, by substitution, or otherwise, to some sort of lien on the land. And to enforce which Mourning brought this suit in equity against Parker and Stratton. And this appeal is prosecuted to reverse a decree dismissing the appellant's petition.

Although the simple exchange of the mortgage notes for a stranger's note might *prima facie* imply a waiver of the lien, yet the fact that the appellant made the exchange only for the accommodation of *Wiggs,* and the fact that *Parker* was in doubtful circumstances and had either removed, or was about to remove to Indiana, and the strong probability that the appellant would not have received his note unsecured, in satisfaction of notes amply secured by lien, may repell that presumption and authorize the conclusion that the parties did not intend more than a mere substitution, which would not extinguish the lien, but only change the debtor and the evidence of the same debt as still secured by the Montjoy lien, or by Parker's note to Wiggs, or by both.

There can be no rational doubt that the appellant consented to the exchange of notes under the belief that Parker's notes were before the exchange, and that if he had not felt so assured, he would not have surrendered Wiggs' notes for Parker's. Nor can we doubt that unless *Wiggs* also intended and expected some such continual lien, he comtemplated a fraud on the appellant, whose only motive for the exchange was the accommodation of Wiggs. It is equally evident that, when Parker bought the house and lot from Wiggs and excuted his note for the last payment, both parties intended that Wiggs should hold the title as a real security for the payment of the note. Consequently when

Wiggs,' still holding the title in trust for the security of that note, assigned it to the appellant, he passed to him the incidental lien, which subsequent conveyance of the title to Parker, with full notice of the trust thus created by himself, did not, as between both those parties, divest in any way, or in any degree.

If Parker intended to hold the title unencumbered by that lien and to pass it to Stratton, he was guilty of fraud, or constructively, cognizant of the understanding and intentions of all the parties.

We are therefore of the opinion that the appellant is entitled to a still subsisting lien on the house and lot. And whether it results from the lien of Montjoy, or the assignment of Parker's note, or from both, is immaterial.

Wherefore, this court adjudges that the circuit court erred in dismissing the appellant's petition, and that judgment is reversed and the cause remanded with instructions to enforce the appellant's lien by sale, unless the debt due be voluntarily paid.

*Dawn, Harlan, for appellant.*

*James, for appellee.*